# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| PAICE LLC and THE ABELL FOUNDATION, | * |
| | * |
| Plaintiffs, | |
| | * |
| v. | Civil Action No. RDB-20-3737 |
| | * |
| VOLVO CAR CORPORATION, *et al.*, | * |
| | |
| Defendants. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

On December 23, 2020, Plaintiffs Paice LLC ("Paice") and the Abell Foundation, Inc. ("Abell") filed suit against Volvo Car Corporation, Volvo Cars of North America, LLC,[1] and Volvo Car USA, LLC, (collectively "Volvo"). The Plaintiffs allege that Volvo has directly and indirectly infringed three of their patents in the manufacture and sale of three of Volvo's hybrid vehicles. (ECF No. 1.) The Plaintiffs also seek enhanced damages, alleging that Volvo's acts of infringement have been willful and were performed with knowledge of the Plaintiffs' rights under the patents. (*Id.*) Volvo filed a Partial Motion to Dismiss (ECF No. 23), seeking dismissal of the Plaintiffs' claims related to indirect infringement and willfulness. (ECF No. 23.) On June 16, 2021, this Court held an audio motions hearing[2] in this case and heard arguments of counsel related to the Defendant's pending motion. (ECF No. 39.) For

---

[1] In their Response in Opposition to the Motion to Dismiss (ECF No. 33), the Plaintiffs stated that they did not oppose dismissal of Defendant Volvo Cars of North America, LLC without prejudice. Following a telephone conference with the parties on May 26, 2021, Volvo Cars of North America, LLC was terminated as a party to this litigation. (ECF No. 37.)

[2] The virtual hearing was conducted pursuant to Standing Order 2021-08 in light of the reduction in operations due to the COVID-19 pandemic.

1

the reasons set forth on the record and for the reasons that follow, the Defendant's Partial Motion to Dismiss (ECF No. 23) is DENIED.

## BACKGROUND

In ruling on a motion to dismiss, this Court "accept[s] as true all well-ple[d] facts in a complaint and construe[s] them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)). Plaintiff Paice is a Delaware limited liability company with its principal place of business in Baltimore, Maryland. (ECF No. 1 ¶ 8.) Led by founder Dr. Alex J. Severinsky, the company develops electric vehicle technology, seeking to improve fuel efficiency and lower emissions, while maintaining superior driving performance. (*Id.*) The Abell Foundation is a Maryland corporation located in Baltimore, Maryland and a non-profit charitable organization dedicated to "fighting urban poverty and finding solutions to intractable problems confronting Maryland residents." (*Id.* ¶ 9.) Abell has contributed millions in funding to Paice. (*Id.* ¶ 2.) Defendant Volvo Car Corporation is a Swedish company with its principal place of business in Sweden. (*Id.* ¶ 10.) Volvo Car USA LLC is a limited liability company organized and existing under the laws of the State of Delaware with a principal place of business in New Jersey. (*Id.* ¶ 12.)

Paice and Abell are co-owners by assignment of all right, title, and interest in and to three patents at issue in this suit:

1) United States Patent No. 6,338,391 ("the '391 patent") entitled "Hybrid Vehicles Incorporating Turbochargers," issued on January 15, 2002;
2) United States Patent No. 7,455,134 ("the '134 patent") entitled "Hybrid Vehicles," issued on November 28, 2008; and
3) United States Patent No. 6,209,672 ("the '672 patent") entitled "Hybrid Vehicle," issued on April 3, 2001.

(*Id.* ¶¶ 18-20.) Each patent covers specific hybrid vehicle technologies including hybrid topologies and methods of control to optimize vehicle performance, fuel economy, and emissions efficiency. (*Id.* ¶ 23.)

Between 1999 and 2004, Paice worked with and/or provided information to Ford, GM, Volkswagen, DaimlerChrysler, and other major automakers and their suppliers to introduce the emissions and fuel economy advantages of using their patented technology and sought to persuade them to license it. (*Id.* ¶ 25.) The Plaintiffs assert that during this time period Paice presented its technology at conferences, appearing on panels with Toyota and Ford, and publishing technical papers on the topic. (*Id.*) An Australian law firm published a study performed in 2009 and 2010 which found that the Plaintiffs owned four of the world's ten most dominant hybrid vehicle patents, with the '672 patent being the top ranked patent. (*Id.* ¶ 27.)

Paice's technology has now been licensed by many major automakers, including Toyota, Ford, Hyundai, Kia, Honda, Daimler, Mitsubishi, Volkswagen, Audi, Porsche, and GM. (*Id.* ¶ 28 (citing *Licensing Agreements*, Paice, http://www.paicehybrid.com/licensing-agreements/ (last visited June 16, 2021).) According to the Plaintiffs, their patents are used in the majority of all hybrid vehicles sold in the United States. (*Id.*) The Plaintiffs also allege that many of the large automotive companies spent years corresponding with Paice, scrutinizing its patents, presenting on technical panels with the company, and working closely with Paice's engineers to learn all they could about its technology. (*Id.*) Yet, only Honda, Daimler, and Mitsubishi chose to license on their own accord. (*Id.*) The other licenses were secured through successive litigation campaigns. (*Id.*)

On February 15, 2019, Paice and Abell contacted Volvo's Vice President and Chief IP Counsel, Raymond Millien, inviting Volvo to discuss licensing the Paice and Abell patents. (*Id.* ¶ 29.) In that letter, Paice stated that Volvo's hybrid vehicles, specifically the XC60 PHEV, XC90 PHEV, and S90 PHEV, were infringing upon at least the '391, '134, and '672 patents. (*Id.*) Paice and Abell did not receive a response. (*Id.*) On July 11, 2019, the Plaintiffs again contacted Mr. Millien, and on August 12, 2019 they received a response. (*Id.*) The Plaintiffs allege that over a six-month period they explained to Volvo the value of their patent portfolio to Volvo's hybrid vehicle lineup, offering to grant Volvo a license. (*Id.*) Volvo did not provide a counteroffer, stating that the Plaintiffs had not shared the terms of their licenses with other companies as requested. (*Id.*) The Plaintiffs allege that Volvo was aware that their licenses with other companies were confidential and that they could not share this information without breaching those agreements. (*Id.*) Paice and Abell assert that they have continued to "urge" Volvo to negotiate with them in good faith, but their efforts have been unsuccessful. (*Id.*)

On December 23, 2020, Plaintiffs filed suit against Volvo. (ECF No. 1.) Count I of the Complaint deals with the '391 patent, Count II the '134 patent, and Count III the '672 patent. With respect to each patent, the Plaintiffs allege that Volvo has directly infringed and continues to infringe the patents under 35 U.S.C. § 271(a) by making, using, offering for sale, or selling within the United States, or importing into the United States hybrid vehicles which infringe the patents (the "accused products") either literally or under the doctrine of equivalents. (*Id.* ¶¶ 30, 42, 53.) They allege that Volvo has actively induced and continues to induce the infringement by others, including its customers, under 35 U.S.C. § 271(b) by manufacturing, selling, offering for sale within the United States and/or importing to the

4

United States the accused products and providing materials and instructions for operation of the same, with the specific intent and knowledge that the hybrid vehicles, materials, and instructions direct, teach, or assist others to infringe the patents. (*Id.* ¶¶ 38, 49, 59.) Finally, they also allege that Volvo has contributed and continues to contribute to the infringement by others under 35 U.S.C. § 271(c) by, among other things, manufacturing, selling, offering for sale within the United States and/or importing into the United States the accused products for use in practicing the patented inventions, knowing that the hybrid vehicles and components are especially made or adapted to use in infringement of the patents, embody a material part of the inventions claimed in the patents, and are not staple articles of commerce suitable for substantial non-infringing use. (*Id.* ¶¶ 39, 50, 60.) The Plaintiffs also seek enhanced damages, alleging that Volvo's acts of infringement have been willful and are made with knowledge of the Plaintiffs' rights under the patents. (*Id.* ¶¶ 41, 52, 62.)

On May 4, 2021, Defendant Volvo filed a Motion to Dismiss, arguing that the Plaintiffs have failed to adequately plead willfulness as required to receive an award of enhanced damages. (ECF No. 23.). Volvo also argues that the Plaintiffs have failed to adequately plead each alleged form of indirect infringement. (*Id.*) On June 16, 2021, this Court conducted an audio motions hearing and heard arguments of counsel related to this pending motion. (ECF No. 39.)

## STANDARD OF REVIEW

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint

if it fails to state a claim upon which relief can be granted. The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The United States Supreme Court's opinions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "require that complaints in civil actions be alleged with greater specificity than previously was required." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). In *Twombly*, the Supreme Court articulated "[t]wo working principles" that courts must employ when ruling on Rule 12(b)(6) motions to dismiss. *Iqbal*, 556 U.S. at 678. First, while a court must accept as true all factual allegations contained in the complaint, legal conclusions drawn from those facts are not afforded such deference. *Id.* (stating that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Second, a complaint must be dismissed if it does not allege "a plausible claim for relief." *Iqbal*, 556 U.S. at 679.

## ANALYSIS

### I. The Plaintiffs have adequately alleged willfulness.

The Patent Act provides that a court "may increase the damages up to three times the amount found or assessed," in certain infringement cases. 35 U.S.C. § 284. The Supreme court has described § 284 as providing for such enhanced damages in cases involving "willful or bad-faith infringement." *Afro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 508 (1964). Generally, to ultimately prove willfulness, a plaintiff must show that an infringer has engaged in conduct that is "willful, wanton, malicious, bad-faith, deliberate, consciously

6

wrong, flagrant, or . . . characteristic of a pirate." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1932 (2016). In *Halo*, the Supreme Court rejected the Federal Circuit's test for willfulness established in *In re Seagate Technology, LLC*, 497 F.3d 1360 (Fed. Cir. 2007). 136 S. Ct. at 1932. Under the two-prong *Seagate* test, a plaintiff was required to first "show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." 497 F.3d at 137. This was known as the "objective prong." Under the second, "subjective" prong, the plaintiff was required to show, again by clear and convincing evidence, that the risk of infringement "was either known or so obvious that it should have been known to the accused infringer." *Id.* In *Halo*, the Supreme Court rejected the idea that a defendant had to be objectively reckless and lowered the standard of proof from "clear and convincing" to "preponderance of the evidence." 136 S. Ct. at 1933-34.

"District Courts post-*Halo* have applied differing requirements for pleading willful infringement, with some requiring a plaintiff to plead facts showing that the accused infringer engaged in egregious conduct, and others declining to do so." *Cascades AV LLC v. Evertz Microsys. LTD*, No. 17 CV 7881, 2019 WL 172758, at *11 (N.D. Ill. Jan. 11, 2019). For example, the court in *Jenkins v. LogicMark, LLC*, held that "at a minimum," plaintiffs alleging willful infringement must plead facts "sufficient to support an inference 'plausible on its face' that the alleged conduct is of the egregious nature described in [*Halo*]." No. 3:16-CV-751-HEH, 2017 WL 376154, at *5 (E.D. Va. Jan. 25, 2017). Meanwhile in *IOENGINE, LLC v. PayPal Holdings, Inc.*, the court stated "there is no requirement that the plaintiff plead additional facts, beyond knowledge of the patent or patents, in order for a claim of willful infringement

7

to survive a motion to dismiss." No. CV 18-452-WCB, 2019 WL 330515, at *7 (D. Del. Jan. 25, 2019). The *IOENGINE* court continued, noting that "[t]he facts bearing on willfulness are likely to be, in large measure, in the possession of the defendant and available to the plaintiff only through discovery." *Id.* at *8.

However, just as the district court held in *Cascades AV*, this Court "need not address the issue" of whether allegations of egregious behavior are required to survive a motion to dismiss because the Plaintiffs have adequately pled such behavior. 2019 WL 172758, at *11. Under either standard, Volvo's Motion to Dismiss would be denied. In *Cascades AV*, the plaintiff alleged that the defendant "ha[d] refused to respond in good faith to [the plaintiff's] notices and attempts to discuss the [patents-in-suit] or the possibility of licensing them." *Id.* The court held that the allegations of the defendant's responses, or lack thereof, to the plaintiff's written communications "belie[d] any argument that it did not consider [the plaintiff's] communication to sufficiently notify it of its alleged infringement." *Id.* Further, the court noted that "the fact that [the defendant] never denied that it was infringing" supported the plaintiff's claims for enhanced damages at that "early stage" in the litigation. *Id.* (internal citation omitted). Similarly, in applying the standard set in *Halo*, the court in *RavenSafe, LLC v. Nexus Technologies, Inc.* held that where the relevant complaint alleged that the defendants knew about the patents, knew about their infringement of those patents, and continued to engage in their infringing activities even though they were aware of the patents and their potential infringement of them, the plaintiff had adequately alleged egregious behavior. No. 1:19-cv-00105-MR, 2019 WL 4594197, at *5 (W.D.N.C. Sept. 20, 2019).

Additionally, this Court notes that this case is not the first in which Paice and Abell have sought to recover for an automotive maker's willful infringement of their patented technology. In *Paice LLC v. Hyundai Motor Co.*, Judge Quarles of this Court denied defendant Hyundai's motion seeking dismissal of the Plaintiffs' claim for willful infringement, applying the more burdensome *Seagate* test. No. WDQ-12-0499, 2013 WL 1316318 (D. Md. Mar. 27, 2013). Judge Quarles noted that from September 2002 to December 2007, Plaintiff Paice had repeatedly contacted the defendants to offer to discuss "its patented hybrid technology." *Id.* at *5. The Plaintiffs' Amended Complaint in that case further alleged specific contacts made by Paice employees to leaders at Hyundai and the information that Paice employees conveyed, including that Paice had certain fundamental patents and Paice's claims associated with those patents. *Id.* Judge Quarles held, in sum, "[g]iven the frequent and detailed communications between Paice and the Defendants, which spanned five years and included discussions about pending litigation involving three of the four patents in suit, a reasonable inference can be drawn that the Defendants were aware that the patents in suit existed." *Id.*

In this case, Plaintiffs Paice and Abell have specifically alleged that on February 15, 2019, they contacted Volvo's Vice President and Chief IP Counsel, Raymond Millien, inviting Volvo to discuss licensing the Paice and Abell patents. (ECF No. 1 ¶ 29.) In that letter, Paice allegedly stated that Volvo's hybrid vehicles (specifically the XC60 PHEV, XC90 PHEV, and S90 PHEV) were infringing upon at least the '391, '134, and '672 patents. (*Id.*) The Plaintiffs allege that over a six-month period they explained to Volvo the value of its patent portfolio to Volvo's hybrid vehicle lineup, offering to grant Volvo a license. (*Id.*) Volvo did not provide a counteroffer and allegedly demanded that the Plaintiffs share information regarding their

9

licenses with other companies. (*Id.*) These allegations are comparable to those alleged in *Cascade AV* and *RavenSafe*, as well as those alleged by the Plaintiffs against Hyundai in their case before Judge Quarles. Further, "[a]t a minimum, the discretion that *Halo* confers on district courts to award enhanced damages based on the nature of specific misconduct in a given case counsels hesitation before dismissing allegations of willfulness at the pleading stage." *Bobcar Media, LLC v. Aardvark Event Logistics, Inc.*, 2017 WL 74729, at *6 (S.D.N.Y. Jan. 4, 2017). Accordingly, with respect to the Plaintiffs' claims of willful infringement, the Defendant's Motion to Dismiss is DENIED.

## II. The Plaintiffs have adequately alleged contributory infringement.

To state a claim for contributory infringement, a plaintiff must allege (1) "that there is direct infringement," (2) "that the accused infringer had knowledge of the patent," (3) "that the component has no substantial noninfringing uses," and (4) "that the component is a material part of the invention." *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010). In this case, the dispute between the parties with respect to contributory infringement revolves around whether the Plaintiffs have adequately alleged that Volvo had knowledge of its alleged infringement prior to the filing of this suit. (ECF Nos. 23-1, 33.)

As noted above, the Plaintiffs in this case have alleged that they specifically identified the three patents-in-suit to Volvo and that they also identified three specific vehicles made by Volvo which infringed those patents. (ECF No. 1 ¶ 29.) They assert that they did this through the letter mailed in 2019, as well as through subsequent discussions with the Defendant over a 6-month period. (*Id.*) They further allege that they had presented on their technology in various public venues alongside major automotive makers and that there was a news article

about the strength and importance of their patents in the hybrid vehicle industry, suggesting some public knowledge of their patents. (*Id.* ¶¶ 25-27.) Finally, the Plaintiffs assert, and Volvo does not deny, that Volvo asked to review the Plaintiffs' licensing agreement with other companies, clearly indicating it was aware that other companies had recognized the validity of the Plaintiffs' claims. (*Id.* ¶ 29.) Accepting those allegations as true, this Court is satisfied that the Plaintiffs' allegations are sufficient to survive a motion to dismiss on the issue of the Defendant's pre-suit knowledge of the Plaintiffs' patents. *See Elm 3DS Innovations, LLC v. Samsung Elecs. Co.*, No. 14-1430-LPS-CJB, 2015 WL 5725768, at *3 (D. Del. Sept. 29, 2015) (plaintiff had adequately alleged knowledge where the plaintiff alleged detailed and specific discussions between the parties regarding the patent-in-suit and that the patent-in-suit was well known within the industry); *see also Cloud Farm Assocs., L.P. v. Volkswagen Group of Am., Inc.*, No. 10-502-LPS, 2012 WL 3069390, at *3 (D. Del. July 27, 2021) (plaintiff had adequately alleged knowledge where the notice letter sent by the plaintiff had specifically identified the patent-in-suit in the subject line). Accordingly, with respect to the Plaintiffs' claim for contributory infringement, the Defendant's Motion to Dismiss is DENIED.

**III.     The Plaintiffs have adequately alleged infringement by inducement.**

To state a claim for infringement by inducement, a plaintiff must allege: (1) direct infringement; (2) "knowledge of acts alleged to constitute infringement"; and (3) "specific intent and action to induce infringement." *DSU Medical Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1305 (Fed. Cir. 2006) (citations omitted). "[T]he Supreme Court interprets § 271(b) to require proof that an inducer 'persuade[d] another to engage in conduct that the inducer knows is infringement.'" *Wright Manufacturing, Inc. v. The Toro Company*, No. MJG-11-1373, 2011 WL

11

6211172, at *3 (D. Md. Dec. 13, 2011 (citing *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 765 (2011)). At the hearing on June 16, 2021, counsel for Volvo indicated that the Defendant's objections to the Plaintiffs' claim for infringement by inducement in this case related to the knowledge and specific intent prongs of inducement cause of action. For the same reasons set forth above, the Defendant's arguments related to its knowledge of the patents-in-suit and its potential infringement are without merit. With respect to the specific intent prong, Volvo's arguments also fail.

"A court may infer specific intent from circumstantial evidence that 'a defendant has both knowledge of the patent and the specific intent to cause the acts constituting infringement.'" *Progme Corporation v. Comcast Cable Commc'ns LLC*, No. 17-1488, 2017 WL 5070723, at *9 (E.D. Pa. Nov. 3, 2017) (quoting *Ricoh Co. v. Quanta Computer Inc.*, 550 F.3d 1325, 1342 (Fed. Cir. 2008). In this case, the Plaintiffs allege that Volvo induced infringement by others, namely its customers, by manufacturing and selling its hybrid vehicles and providing materials and instructions for operation of those vehicles which directed its customers to infringe the patents-in-suit. (ECF No. 1 §§ 38, 49, 59.) At least one court has addressed similar arguments of a plaintiff pointing to distribution of an allegedly infringing product with instructions directing customers to infringe its patents as evidence of specific intent to induce infringement. In *Biacore v. Thermo Bioanalysis Corp.*, the court held on summary judgment that the evidence of record demonstrated that the defendant had intended to cause, and did cause, its customers to infringe the patent at issue by inducement where:

> Thermo actively marketed the infringing CM-dextran cuvette, sold a biosensor system in which the infringing cuvette could be employed, and produced and provided to its customers manuals instructing them to use the cuvette in a manner that infringes claims 4 and 5 of [the patent-in-suit]. While doing so,

12

> Thermo was acutely aware of the patent at issue. The record further indicates, and the parties do not appear to dispute, that Thermo's customers did employ the cuvettes in a manner consistent with Thermo's instructions.

79 F. Supp. 2d 422, 459 (D. Del. 1999). Other courts have cited *Biacore* for the proposition that a "manufacturer who actively marketed a product with instructions on how to use it in a manner that infringed on the plaintiff's patent was liable for inducement of infringement." *See e.g.*, *Catapano v. Wyeth Ayerst Pharmaceuticals, Inc.*, 88 F. Supp. 2d 27, 30 (E.D.N.Y. 2000).

The Plaintiffs have specifically alleged that Volvo provided instruction manuals with its vehicles, directing its customers to operate the vehicles, and that any operation of the hybrid vehicles infringes the Plaintiffs' patents. They contend that their allegation that Volvo supplied such manuals supports an inference that it specifically intended that its customers would drive the vehicles and, therefore, infringe the patents-in-suit. At this stage in the litigation, the Plaintiffs need only state a plausible claim for relief. *See Iqbal*, 556 U.S. at 679. With respect to the Plaintiff's claim for infringement by inducement, the Defendant's motion to Dismiss is DENIED.

## CONCLUSION

For these reasons, the Defendant Volvo's Partial Motion to Dismiss (ECF No. 23) is DENIED.

A separate Order follows.

Dated June 23, 2021

                                              /s/

                                        Richard D. Bennett
                                        United States District Judge