IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| PAICE LLC and THE ABELL FOUNDATION, INC., | * | |
| | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No. RDB-20-3737 |
| VOLVO CAR CORPORATION, *et al.*, | * | |
| | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM ORDER

Plaintiffs Paice LLC ("Paice") and the Abell Foundation, Inc. ("Abell") bring this action against Defendants Volvo Car Corporation and Volvo Car USA, LLC (collectively, "Volvo"), alleging infringement of U.S. Patents 6,338, 391 ("the '391 patent"); 7,455,134 ("the '134 patent"); and 6,209,672 ("the '672 patent") (collectively, the "Asserted Patents"). Five related memoranda have been submitted to this Court with respect to claim construction: the parties' Joint Claim Construction Statement (ECF No. 52), Plaintiffs' Opening Claim Construction Brief (ECF No. 54), Volvo's Opening Claim Construction Brief (ECF No. 53), Plaintiffs' Responsive Claim Construction Brief (ECF No. 56), and Volvo's Responsive Claim Construction Brief (ECF No. 55). In these memoranda, the parties request that this Court construe certain claim language from the patents at suit pursuant to *Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996). These issues have been fully briefed, and this Court held a *Markman* hearing on January 27, 2022. This

Memorandum Order supplements this Court's construction of the claim language discussed in the parties' briefs and addressed at the *Markman* hearing.

## BACKGROUND

Paice is Delaware limited liability company with its principal place of business in Baltimore, Maryland. (ECF No. 1 ¶ 8.) Originally established in 1992 by Dr. Alex J. Severinsky, Paice develops and promotes hybrid electric vehicle technology in order to improve fuel efficiency and reduce emissions while maintaining superior driving performance. (*Id.*) The Abell Foundation is a Maryland corporation with its headquarters in Baltimore. (*Id.* ¶ 9.) Abell is a non-profit charitable organization dedicated to fighting urban poverty. (*Id.*) Abell also invests in local companies, including those focused on environmental issues. (*Id.*) Volvo Car Corporation is a Swedish company with its principal place of business in Göteborg, Sweden. (*Id.* ¶ 10.) Volvo Car USA LLC is a Delaware limited liability company with its principal place of business in Rockleigh, New Jersey. (*Id.* ¶ 12.)

Paice and Abell are co-owners by assignment of all right, title, and interest in and to three patents at issue in this suit:

1) United States Patent No. 6,338,391 ("the '391 patent") entitled "Hybrid Vehicles Incorporating Turbochargers," issued on January 15, 2002;

2) United States Patent No. 7,455,134 ("the '134 patent") entitled "Hybrid Vehicles," issued on November 28, 2008; and

3) United States Patent No. 6,209,672 ("the '672 patent") entitled "Hybrid Vehicle," issued on April 3, 2001.

(*Id.* ¶¶ 18-20.) These three patents are in the family of patents related to the '672 patent, which contains over a dozen U.S. patents derived from applications originally filed in 1998. (*Id.* ¶ 23.) The '672 patent is entitled "Hybrid Vehicle" and protects "a hybrid electric vehicle

that is fully competitive with presently conventional vehicles as regards performance, operating convenience, and cost, while achieving substantially improved fuel economy and reduced pollutant emissions." '672 patent, col.1.13-18.

On December 23, 2020, Plaintiffs sued Volvo for directly, indirectly, and willfully infringing the '391, '134, and '672 patents in violation of 35 U.S.C. § 271. (Compl., ECF No. 1.) In a Memorandum Opinion dated June 23, 2021, this Court denied Volvo's Motion to Dismiss Plaintiffs' indirect infringement claims. (ECF No. 41.) On January 27, 2022, this Court held a claim construction hearing pursuant to *Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996).

## CLAIM CONSTRUCTION PRINCIPLES

Claim construction is a matter of law. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 389-90 (1996). "It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (internal quotation marks and citation omitted). In interpreting a claim, a court should look first to the intrinsic evidence, *i.e.*, the patent itself, including the claims and the rest of the specification, and if in evidence, the prosecution history. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996) (citation omitted). Although it is within the sound discretion of a court to use extrinsic evidence as an aid in construing a claim, extrinsic evidence is "unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence." *Phillips*, 415 F.3d at 1319. Claim construction is a matter of law, but a district

court may make findings of fact necessary to the claim construction analysis. *See Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318 (2015).

Generally, courts should construe a claim term to mean "what one of ordinary skill in the art at the time of the invention would have understood the term to mean." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 986 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). "Importantly, the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Phillips*, 415 F.3d at 1313. Thus, the specification is "always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Id.* at 1315 (quoting *Vitronics*, 90 F.3d at 1582) (internal quotation marks omitted). Yet, courts should not make the mistake of "reading a limitation from the written description into the claims." *Id.* at 1320. The Federal Circuit has "repeatedly warned against confining the claims" to the embodiments described in the specification. *Id.* at 1323. To this end, the Federal Circuit has "acknowledge[d] the difficulty in drawing the fine line between construing the claims in light of the specification and improperly importing a limitation from the specification into the claims." *Cont'l Circuits LLC v. Intel Corp.*, 915 F.3d 788, 797 (Fed. Cir. 2019), *cert. denied*, 140 S. Ct. 648 (2019).

Although claim terms are entitled to a "heavy presumption that they carry their ordinary and customary meaning," *Elbex Video, Ltd. v. Sensormatic Elecs. Corp.*, 508 F.3d 1366, 1371 (Fed. Cir. 2007), this presumption is overcome in two cases. First, a party challenging the ordinary meaning of a claim term may prevail "where the patentee has chosen to be his

own lexicographer." *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Grp., Inc.*, 262 F.3d 1258, 1268 (Fed. Cir. 2001) (internal quotation marks omitted). Second, the presumption for ordinary meaning will be rebutted "if the inventor has disavowed or disclaimed scope of coverage, by using words or expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope." *Phillips*, 415 F.3d at 1319 (quoting *Tex. Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193 (Fed. Cir. 2002)). A court must examine the prosecution history in the United States Patent and Trademark Office ("PTO") "to determine whether the patentee has relinquished a potential claim construction in an amendment to the claim or in an argument to overcome or distinguish a reference." *Id.* As with the specification, the prosecution history "provides evidence of how the PTO and the inventor understood the patent" and represents the patentee's attempt "to explain and obtain the patent." *Id.* at 1317. As the prosecution history "represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Id.* Where a patentee unequivocally relinquishes a potential claim construction by disavowing "a certain meaning to obtain his patent," the doctrine of prosecution disclaimer attaches and "narrows the ordinary meaning of the claim congruent with the scope of the surrender." *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1324 (Fed. Cir. 2003).

## ANALYSIS

### I.  Agreed Constructions

#### A.  "monitor patterns of vehicle operation over time" ('672 Patent)

The parties agree that this term should be construed as "monitor a driver's repeated driving operations over time." (ECF No. 52 at 1.)

#### B.  "controller" ('672, '391, and '134 Patents)

On the record at the *Markman* hearing, the parties informed this Court that they now agree that this term should be given its plain and ordinary meaning.

### II.  "road load / RL" ('391, '672, and '134 Patents)

| Plaintiffs' Construction | Volvo's Construction |
|---|---|
| "the amount of instantaneous torque required to propel the vehicle, be it positive or negative" | "the amount of torque actually required to propel the vehicle, which may be positive or negative" |

Plaintiffs' proposed construction is the construction affirmed by the Federal Circuit in *Paice LLC v. Ford Motor Co.*, 681 F. App'x 904, 910 (Fed. Cir. 2017). Volvo argues that (1) this Court is not bound by the Federal Circuit's construction because Volvo was not a party to the earlier proceeding, and (2) the addition of the phrase "actually required" clarifies the meaning of "road load" for the jury. For the reasons stated on the record at the *Markman* hearing, Volvo's arguments are meritless, and this Court will construe "road load / RL" as "the amount of instantaneous torque required to propel the vehicle, be it positive or negative."[1]

---

[1] *See Paice LLC v. Hyundai Motor Co.*, No. WDQ-12-0499, 2014 U.S. Dist. LEXIS 101303, at *22 (D. Md. July 24, 2014) (noting that "[t]he Defendants' addition of the phrase 'actually required' does not clarify the meaning of 'road load' for the jury").

## III.     "setpoint / SP" ('391 and '672 Patents)

| Plaintiffs' Construction | Volvo's Construction |
|---|---|
| "a predetermined torque value that may or may not be reset" | "a definite but potentially variable torque value at which a transition between operating modes may occur" |

Again, Plaintiffs' proposed construction is the construction affirmed by the Federal Circuit in *Paice LLC v. Ford Motor Co.*, 681 F. App'x 904, 910 (Fed. Cir. 2017). Volvo argues (1) that this Court is not bound by the Federal Circuit's affirmance of the Patent Trial and Appeal Board's ("PTAB") construction, and (2) that Plaintiffs' position is inconsistent with Paice's earlier support in prior litigation for the construction for which Volvo now advocates. As this Court stated at the *Markman* hearing, Volvo's arguments are meritless.

While it is true that the PTAB's standard for claim construction is different from the standard district courts employ[2], district courts regularly consider PTAB decisions for guidance in reaching claim construction decisions. *See, e.g.*, *Contentguard Holdings, Inc. v. Amazon.com, Inc.*, No. 2:13-cv-1112, 2015 U.S. Dist. LEXIS 34667, 2015 WL 8073722, at *11 (E.D. Tex. Dec. 4, 2015) ("On balance, Plaintiff has failed to justify departing from the PTAB's construction, which is entitled to 'reasoned deference.'"); *Memory Integrity, LLC v. Intel Corp.*, No. 3:15-cv-00262, 2016 U.S. Dist. LEXIS 36806, 2016 WL 1122718, at *19 n.9 (D. Or. Mar. 2, 2016) ("PTAB decisions may at least provide a district court with guidance. . . . This Court uses the PTAB decision on this issue not for guidance, but for comfort.");

---

[2] *See Cisco Sys. v. Capella Photonics, Inc.*, No. 20-cv-01858-EMC, 2020 U.S. Dist. LEXIS 152315, at *13 (N.D. Cal. Aug. 21, 2020) (explaining that the PTAB "applies the broadest reasonable construction of the claims while the district courts apply a different standard of claim construction as explored in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc)").

*Evolutionary Intelligence, LLC v. Sprint Nextel Corp.*, No. C-13-04513, 2014 U.S. Dist. LEXIS 139066, 2014 WL 4802426, at *4 (N.D. Cal. Sept. 26, 2014) ("While the PTAB's constructions will not be binding on this court, the IPR will inform this court's ultimate reasoning.").

In this case, the Federal Circuit has affirmed the construction of the PTAB. Accordingly, this Court affords that construction great weight, though it may not be binding on Volvo. *Cf. Canfield Sci., Inc. v. Drugge*, Civil Action No. 16-cv-04636, 2020 U.S. Dist. LEXIS 203131, at *7 (D.N.J. Oct. 29, 2020) (reading *Pers. Audio, LLC v. CBS Corp.*, 946 F.3d 1348, 1354 (Fed. Cir. 2020) to hold that a PTAB holding in an inter partes review does not gain preclusive effect until affirmed on direct appeal). When pressed on the record at the *Markman* hearing, Volvo was unable to cite any cases supporting its proposed construction of this term. This Court does not see any inconsistency in Plaintiffs' acceptance of the Federal Circuit's decision with respect to this claim term. Accordingly, this Court will construe "setpoint / SP" as "a predetermined torque value that may or may not be reset."

**IV.    "operational mode / operating mode" ('672 and '391 Patents)**

| Plaintiffs' Construction | Volvo's Construction |
|---|---|
| Plain and ordinary meaning | "a mode of operation that is characterized by the source of torque used to propel the vehicle" |

Plaintiffs argue that this term defines itself. Volvo argues that the plain and ordinary meaning does not provide the jury with enough information to understand the term in the context of the patents at suit. This Court concludes that this term does need construction in order to be understood by the jury. For the reasons set forth at the *Markman* hearing, this

8

Court construes "operational mode / operating mode" as "mode of operation which describes which energy source is being used to propel the vehicle and/or charge the battery."[3]

V.   **"alternating current-direct current (AC-DC) converter" ('134 Patent)**

| Plaintiffs' Construction | Volvo's Construction |
|---|---|
| Plain and ordinary meaning | "an inverter/charger circuit" |

Plaintiffs argue that this term is easily understood by a lay jury. Volvo argues that its proposed construction is consistent with the '134 patent's specification. For the reasons set forth on the record at the *Markman* hearing, this Court concludes that this term also needs construction in order to be understood by the jury. Accordingly, consistent with '134 patent col. 32:39-50, this Court construes "alternating current-direct current (AC-DC) converter" as "a device that performs the conversion of DC stored by the battery bank to AC for motor operation and the conversion of AC induced in the motors when operated as generators to DC for battery charging."[4]

VI.   **Mode Terms**

Plaintiffs argue that Volvo's construction of these terms is inconsistent with the claims and improperly inserts the criteria for selecting each mode into the definitions of the modes themselves. Volvo argues that its proposed construction is consistent with the specifications in the patents. As this Court stated on the record at the *Markman* hearing, the

---

[3] At the hearing, Plaintiffs agreed that this Court's construction was acceptable. Volvo objected to the use of "and/or" instead of "and."
[4] Plaintiffs agreed with this Court's construction. Volvo objected to the use of "a device" instead of "a circuit."

percentages in Volvo's proposed constructions are confusing and would not aid the jury in understanding the modes at issue. This Court also notes that the construction of these terms must "account for the source and/or direction of the flow of energy and/or torque." *Paice LLC v. Toyota Motor Corp.*, No. 2:04-CV-211-DF, 2005 U.S. Dist. LEXIS 45716, at *67 (E.D. Tex. Sep. 28, 2005); *see also Pinpoint Inc. v. Hotwire, Inc.*, No. 11 C 5597, 2013 U.S. Dist. LEXIS 38371, at *25 (N.D. Ill. Mar. 20, 2013) (noting that though another district court's construction of related claims is not binding, it may be "helpful and persuasive"). For the reasons set forth at the hearing, this Court will construe these terms as follows.

### A. "low-speed mode I" ('672 and '391 Patents)

| Plaintiffs' Construction | Volvo's Construction |
|---|---|
| "a mode of operation in which the traction motor provides torque to the wheels" | "a mode of operation with road load below 30% of MTO and between 50% and 70% of the state of charge of the battery bank in which the traction motor is the sole source of torque to propel the vehicle" |

This Court construes "low-speed mode I" as "a mode of operation in which the traction motor provides torque to the wheels which results in the vehicle being operated as a straight electric car."[5]

### B. "cruising mode IV" ('672 and '391 Patents)

| Plaintiffs' Construction | Volvo's Construction |
|---|---|
| "a mode of operation in which the internal combustion engine provides torque to the wheels" | "a mode of operation with road load between 30% and 100% of MTO in which the engine is the sole source of torque to propel the vehicle" |

---

[5] The parties agreed to the Court's construction.

10

This Court construes "cruising mode IV" as "a mode of operation in which the internal combustion engine provides torque to the wheels and which employs the combustion engine and may employ the electric motor."[6]

### C. "acceleration mode V" ('672 and '391 Patents)

| Plaintiffs' Construction | Volvo's Construction |
|---|---|
| "a mode of operation in which the internal combustion engine and the traction motor provide torque to the wheels" | "a mode of operation with road load above 100% of MTO in which engine and the traction motor are both the sources of torque to propel the vehicle" |

This Court construes "acceleration mode V" as "a mode of operation in which the internal combustion engine and the traction motor provide torque to the wheels, and which employs both the combustion engine and the electric motor." [7]

### D. "sustained high-power mode VI" ('391 Patent)

| Plaintiffs' Construction | Volvo's Construction |
|---|---|
| "a mode of operation in which the internal combustion engine (with the turbocharger operating) provides torque to the wheels" | "a mode of operation with road load above 100% of MTO after road load has been above 100% of MTO for a preset period of time in which engine and the traction motor are both the sources of torque to propel the vehicle and a turbocharger coupled to the engine is engaged" |

---

[6] Plaintiffs accepted this Court's construction. Volvo objected because it asserts that only the engine provides torque to the wheels in this mode.
[7] Plaintiffs agreed to the Court's construction. Volvo objected to the extent the construction does not include the reference to percentages.

This Court construes "sustained high-power mode VI" as "a mode of operation in which the internal combustion engine (with the turbocharger operating) provides torque to the wheels where the engine is employed, and the electric motor may be employed."[8]

## CONCLUSION

For the reasons stated above, it is HEREBY ORDERED this 2nd day of February, 2022, that the disputed claim terms are construed as follows:

1. "road load / RL" is defined as "the amount of instantaneous torque required to propel the vehicle, be it positive or negative;"

2. "setpoint / SP" is defined as "a predetermined torque value that may or may not be reset;"

3. "operational mode / operating mode" is defined as "mode of operation which describes which energy source is being used to propel the vehicle and/or charge the battery;"

4. "alternating current-direct current (AC-DC) converter" is defined as "a device that performs the conversion of DC stored by the battery bank to AC for motor operation and the conversion of AC induced in the motors when operated as generators to DC for battery charging;"

5. "low-speed mode I" is defined as "a mode of operation in which the traction motor provides torque to the wheels which results in the vehicle being operated as a straight electric car;"

6. "cruising mode IV" is defined as "a mode of operation in which the internal combustion engine provides torque to the wheels and which employs the combustion engine and may employ the electric motor;"

7. "acceleration mode V" is defined as "a mode of operation in which the internal combustion engine and the traction motor provide torque to the wheels, and which employs both the combustion engine and the electric motor;" and

8. "sustained high-power mode VI" is defined as "a mode of operation in which the internal combustion engine (with the turbocharger operating) provides torque to the wheels where the engine is employed, and the electric motor may be employed."

---

[8] Plaintiffs agreed to the Court's construction. Volvo objected because it asserts that the electric motor must be employed in this mode.

_____/s/_____
Richard D. Bennett
United States District Judge